JEWELL JIVIDEN, *et al.*

*v.*

ROGER LEGG, *et al.*

(No. 13852)

Decided July 11, 1978.

*Edward G. Atkins* for appellants.

*Roger A. Wolfe, John M. Slack, III, Jackson, Kelly, Holt & O'Farrell* for appellees.

CAPLAN, CHIEF JUSTICE:

Jewell Jividen and Brycle Jividen, her husband, instituted an action against Roger Legg and Ellsworth Legg, charging that Roger negligently drove an automobile against Jewell, at the time a pedestrian, and caused her to suffer serious permanent injuries. Brycle sued for the loss of consortium, services and companionship of his wife. At the time of the incident Roger was driving a vehicle then believed to be owned by Ellsworth Legg, whose liability, if any, derived from the "family purpose doctrine." It having been later determined that the automobile which Roger was driving was not owned by Ellsworth Legg, his father, the latter was subsequently dismissed as a party defendant.

In a jury trial, following the plaintiff's evidence, the court granted the defendant's motion for a directed ver-

dict, the grounds therefor being that (1) the plaintiffs failed to make a prima facie case of negligence on the part of the defendant, and (2) plaintiff Jewell Jividen was guilty of contributory negligence as a matter of law. The court granted the directed verdict but did not indicate upon which ground it acted. Upon the denial of the plaintiffs' motion for a new trial, this appeal was prosecuted.

It appears from the record that Jewell Jividen, on September 1, 1973, at approximately 4:15 P.M., while crossing Route 62, at Midway in Putnam County, was struck by a vehicle driven by defendant Roger Legg. At this point, Route 62 extended north and south and was visible for approximately a quarter of a mile in either direction. Mrs. Jividen testified that she had been visiting a neighbor who lived across the road from her house. As she started to cross the highway she saw two cars travelling south and she waited until they had gone approximately 150 feet down the road. She then looked both ways and, seeing nothing, began to cross the road. She testified that she walked straight across the road and had reached the berm with her right foot when she was struck. She said she heard nothing before the car hit her.

The speed limit in this area was 55 miles per hour. Though this was a rural section, there were fifteen to twenty houses located within a quarter of a mile of the place where the accident occurred.

Roger Legg testified that he first saw Mrs. Jividen when he was about fifty feet from her and that he then applied his brakes; that he "was doing 45 miles per hour" at the time; that Mrs. Jividen was "on the centerline"; that she was walking fast and looking straight ahead; that his car did not skid when he applied his brakes; that it was about one second from the time he applied his brakes until he struck her; that he did not sound his horn; and that he struck her with his right back bumper.

Upon the evidence adduced at the trial, the court, as noted above, granted the defendant's motion for a directed verdict. The sole issue on this appeal is whether the trial court erred in so directing a verdict. To resolve that issue we must determine whether (1) the plaintiffs presented a prima facie case of primary negligence on the part of the defendant; and (2) whether plaintiff Jewell Jividen was guilty of contributory negligence as a matter of law.

In determining whether the plaintiffs made a prima facie case of negligence against the defendant we must consider all of the evidence. It is the plaintiffs' position that the defendant was driving too fast under the conditions reflected in this case. Mrs. Jividen testified that there were a number of homes in the area. The defendant testified that he was familiar with this portion of road.

*W.Va. Code,* 1931, 17C-6-1, as amended, provides in part:

> (a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards, then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highways in compliance with legal requirements and the duty of all persons to use due care.
>
> * * *
>
> (c) The driver of every vehicle shall, consistent with the requirements of subsection (a), drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when travelling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

Although the evidence shows that the defendant was driving at the rate of forty-five miles per hour, within the legal speed limit, the jury could have found that he was driving at an excessive and unsafe speed under the then existing conditions, in violation of the above statute. Such violation, if proved to be the proximate cause of the injury, would create a prima facie case of negligence. *Thomas v. Ramey*, 156 W.Va. 191, 192 S.E.2d 873 (1972); *Cross v. Noland*, 156 W.Va. 1, 190 S.E.2d 18 (1972); *Lewis v. McIntire*, 150 W.Va. 117, 144 S.E.2d 319 (1965); *Payne v. Kinder*, 147 W.Va. 352, 127 S.E.2d 726 (1962); *Spurlin v. Nardo*, 145 W.Va. 408, 114 S.E.2d 913 (1960). Thus, the issue of speed may be one for jury determination.

Asserting that they made a prima facie case of negligence against the defendant sufficient to warrant jury determination, the plaintiffs further contend that the defendant failed to keep his car under control; that he did not sound his horn; that he failed to keep a proper lookout, as evidenced by the fact that he did not see her until he was only fifty feet away; and, that he failed to take the necessary action to avoid striking her. If the evidence had been presented to the jury, they, being the finders of fact, could have found that the acts or omissions of the defendant did or did not constitute primary negligence. At least, these are proper matters for jury determination. As noted in *Kretzer v. Moses Pontiac Sales, Inc.*, ___ W.Va. ___, 201 S.E.2d 275 (1973), "Ordinarily, where a pedestrian is injured as a result of being struck by an automobile in crossing the street, it presents a question for jury determination."

In *Spaur v. Hayes, Admr.*, 147 W.Va. 168, 126 S.E.2d 187 (1962) the Court, quoted Point 1 of the Syllabus of *Fielder v. Service Cab. Co.*, 122 W.Va. 522, 11 S.E.2d 115 (1940) as follows:

> Before directing a verdict in a defendant's favor, every reasonable and legitimate inference favorable to the plaintiff fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should

be assumed as true which the jury may properly find under the evidence.

Demonstrating further the extreme caution and, in fact, reluctance of courts to direct a verdict for a defendant is the following language from Syllabus Point 1 of *Jenkins v. Chatterton*, 143 W.Va. 250, 100 S.E.2d 808 (1957):

'Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence. Syllabus, *Nichols v. Raleigh-Wyoming Coal Co.*, 112 W.Va. 85.'

It is our judgment that the evidence in the instant case is sufficient to sustain a verdict for the plaintiff, should the jury so find, and that it was reversible error for the court to have directed a verdict for the defendant on the ground that the evidence was insufficient to create a prima facie case of negligence.

The second ground relied upon by the defendant in his motion for a directed verdict—that plaintiff Jewell Jividen was guilty of contributory negligence as a matter of law—is entirely without merit and is rejected.

This Court has consistently held that when the evidence is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them, the questions of negligence and contributory negligence are for jury determination. *Kidd v. Norfolk & Western Rwy. Co.*, 156 W.Va. 296, 192 S.E.2d 890 (1972); *Sydenstricker v. Vannoy*, 151 W.Va. 177, 150 S.E.2d 905 (1966); *Pygman v. Helton*, 148 W.Va. 281, 134 S.E.2d 717 (1964); *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963); *Campbell v. Campbell*, 146 W.Va. 1002, 124 S.E.2d 345 (1962); *Lewis v. Mosorjak and McDonald*, 143 W. Va. 648 104 S.E.2d 294 (1958).

The evidence in the case at bar was conflicting. Mrs. Jividen testified that she had almost completely crossed

the road and that her right foot was actually on the berm. The defendant testified that she was "on the centerline." Certainly, this testimony begs for jury determination. Furthermore, the facts are such that reasonable men may draw different conclusions from them. Was the plaintiff, after looking in both directions and seeing nothing, obligated to continue to look for approaching vehicles? This query was succinctly answered in *Kretzer v. Moses Pontiac Sales, Inc., supra,* as follows:

> A pedestrian is not required, when using a public highway, to be continuously looking to ascertain if vehicles are approaching and a failure to do so if he is injured will not be construed as negligence on his part as a matter of law.

See *Stamper v. Bannister,* 146 W.Va. 100, 118 S.E.2d 313 (1961) and *Bower v. Brannon,* 141 W.Va. 435, 90 S.E.2d 342 (1955), both of which emphatically hold, in circumstances comparable to those in the instant case, that the question of contributory negligence is one for jury determination.

For the reasons noted herein, the judgement of the Circuit Court of Putnam County is reversed and the case is remanded for a new trial.

*Reversed and remanded for a new trial.*